# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **DANIELLE CARTER** | * | **CIVIL ACTION NO. 05-2077** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Danielle Carter, born April 4, 1984, filed an application for supplemental security income payments on October 19, 2003, and an application for disability insurance benefits on January 10, 2005, alleging disability as of March 17, 2004, due to rheumatoid arthritis and lupus.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following:

**(1) Records from Dr. James Lipstate dated July 25, 2001 to May 22, 2003.** Claimant had a history of systemic lupus with prominent JRA overlap symptoms. (Tr. 128). She was taking Methotrexate, Prednisone, folate, and Allegra. On examination on July 25, 2001, she had 1-2+ synovitis of the wrist, more so in the left hand. At that point, Dr. Lipstate was relatively pleased with her response to medications.

On July 24, 2002, claimant reported that she was pregnant. (Tr. 126). She had a little erythema in her eye, but was not breaking out in any hives. She was status-post splenectomy for immune thrombocytopenia in 1998. (Tr. 140).

On examination, claimant had some chronic synovitis and fusiform swelling in the hands and wrists. (Tr. 126). Dr. Lipstate continued her on Prednisone, folic acid, and a multivitamin. (Tr. 127).

On March 26, 2003, claimant complained of right hip and thigh pain. (Tr. 125). Dr. Lipstate noted that she had delivered a healthy baby two months prior which was two months premature. She had developed autoimmune thrombocytopenia in the last trimester, which had responded well to therapy with corticosteroids and

2

immune globulin. (Tr. 144).

On examination, claimant had some chronic synovitis, especially in the wrists. (Tr. 125). Her elbows and shoulders moved well, but she had some pain with internal rotation of the right hip and abduction. Dr. Lipstate continued her medications.

On May 22, 2003, claimant complained of right hip pain. (Tr. 146). She had had some minor urticaria the previous week, which had resolved. On examination, she had some chronic synovitis in the hands and wrists. She had tenderness over the trochanteric bursa of the right hip, and some minor swelling in her knees. Dr. Lipstate opined that claimant had a component of trochanteric bursitis of the right hip, which he injected with Depo-Medrol in 1cc of 1% Lidocaine.

**(2) Consultative Internal Medicine Examination by Dr. Raymond F. Taylor dated February 9, 2004**. Claimant complained of swelling in both feet if she stood for more than two hours at a time. (Tr. 161). She also reported pain and swelling in the joints, particularly of her feet, knees, and shoulder. She had been diagnosed with rheumatoid arthritis in 1995, and lupus in 1998. She had asthma attacks every other year. (Tr. 162).

At that time, claimant was working in a small kiosk at the mall selling telephones for 8 hours a day, 3 or 4 days a week. (Tr. 161). She was also a full-time student at the University of Louisiana–Lafayette studying computer science. Her

medications included Methotrexate, folic acid, Vioxx, Prednisone, and Allegra.

On examination, claimant was 61 ½ inches tall and weighed 110 pounds. (Tr. 162). Heart and lungs were normal. (Tr. 162-63). Range of motion of the back and neck was normal. (Tr. 163). Straight leg raising was negative. There was no spasm, tenderness, loss of muscle strength, or atrophy.

Claimant had mild swelling of the MP joints in both hands. Grip strength was excellent. Manual dexterity and grasping ability was normal. She had no swelling, instability, or deformities in the joints. Gait and station were normal, and claimant could heel and toe walk without difficulty.

Neurological and psychological exams were normal. (Tr. 163-64). Chest x-rays were normal. (Tr. 164).

Dr. Taylor's diagnoses were a history of rheumatoid arthritis and a history of asthma. He noted that claimant was apparently handling her conditions and medications fairly well. He found that her physical examination, aside for some mild swelling of the MP joints of both hands, was essentially normal.

Based on the physical findings, Dr. Taylor opined that claimant's work activities needed to be limited. He stated that she should not perform activities requiring extensive standing or walking or repetitive actions using her hands.

4

**(3) Residual Functional Capacity ("RFC") Assessment dated March 12, 2004**. The examiner determined that claimant could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. (Tr. 166). She could stand/walk and sit about 6 hours in an 8-hour workday. She had unlimited push/pull ability. She could frequently perform all postural activities. (Tr. 167). She was able to perform most activities of daily living. (Tr. 170).

**(4) Records and Treating Physician Questionnaire from Dr. Lipstate dated May 22, 2003 to January 28, 2005**. On January 14, 2005, Dr. Lipstate reported that claimant had gone to the emergency room the night before with some vaginal bleeding. (Tr. 182, 191-94). He noted that she was eight weeks pregnant. (Tr. 182). On examination, she had some chronic swelling in the wrists, a little tenderness in the left shoulder, and some achiness in her hips. Dr. Lipstate's impression was ITP secondary to lupus and pregnancy at eight weeks with some vaginal bleeding, but probably not due to the thrombocytopenia.

In the Treating Physician Questionnaire dated January 28, 2005, Dr. Lipstate checked that claimant could occasionally lift up to 10 pounds and rarely lift over 20 pounds. (Tr. 179). He stated that she could stand for 2 hours at a time, walk for 4 blocks, stand/walk for 4 hours total in an 8-hour workday, sit for 2 hours at a time, and sit for at least 6 hours total in an 8-hour workday. He noted that she would need

to take unscheduled breaks two to three times for 15 minutes at a time during a working day. (Tr. 180). He also wrote that she would need to miss work or leave work early on rare occasions.

Dr. Lipstate noted that claimant was pregnant and had developed a low platelet count which was being treated by Dr. Meza.

**(5) Emergency Room Records from Our Lady of Lourdes dated June 13, 2004 to December 28, 2004**. On June 13, 2004, claimant was admitted with chest and rib pain. (Tr. 221). She presented with left-sided rib pain and swelling on October 30, 2004. (Tr. 218). The impression was left chest wall pain, for which she was prescribed Lortab and Bextra. (Tr. 219).

On November 5, 2004, claimant complained of weakness, aching and fever. (Tr. 211-13). The impression was an upper respiratory infection. (Tr. 212).

On December 28, 2004, claimant was admitted with left side pain, soreness, and skin sensitivity. (Tr. 205). The diagnosis was shingles.

**(6) Claimant's Administrative Hearing Testimony**.[1] At the hearing on March 2, 2005, claimant was 20 years old. (Tr. 33). She was a high school graduate, and had taken 12 hours in college. (Tr. 33-34). She stated that she had dropped out of college because the stairs affected her condition. (Tr. 35, 41). She had past work

---

[1] Much of the transcript was inaudible and could not be transcribed.

6

experience as a retail sales consultant and at Olan Mills. (Tr. 36, 41).

Claimant testified that she could not work because it was hard for her to sit for a long period of time due to hip and joint problems. She testified that she was taking Prednisone, Allegra, and other medications. She complained that she had severe joint, wrist, ankle, foot, back, shoulder and knee pain. (Tr. 39).

Regarding activities, claimant stated that she had a two-year-old child. (Tr. 38-39). She stated that she laid down a lot because she could not do too much. (Tr. 40).

As to restrictions, claimant testified that she could stand for 30 minutes at the most. (Tr. 42). She stated that she did not have grip in her hands. She reported that she could walk a block or two on a bad day, and less than a mile on a good day. (Tr. 43). She said that she could sit for an hour.

**(7) The ALJ's Findings**. Claimant argues that the ALJ erred in failing to accord proper weight to the opinions of her treating physician and the consultative examiner, which resulted in an erroneous assessment of her RFC. Because I find that the ALJ erred in rejecting the treating physician's opinion, I recommend that the Commissioner's decision be **REMANDED** for further proceedings.

Claimant argues that the ALJ erred in rejecting the opinions of both Dr. Taylor and Dr. Lipstate regarding her functional limitations. In the decision, the ALJ rejected Dr. Taylor's assessment regarding repetitive actions using her hands because

7

"the observed abnormal findings reported by the doctor are minimal." (Tr. 18). Additionally, he discounted Dr. Lipstate's opinion regarding claimant's need for unscheduled breaks "because it is unsupported by clinical data and at odds with his own examination findings and is more consistent with her subjective symptoms related to her pregnancy."

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with ... other substantial evidence*." (emphasis added). *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

In this case, the ALJ rejected Dr. Lipstate's findings based on the ALJ's interpretation of the medical records. (Tr. 18). However, he did not cite any *evidence* for discounting the treating physician's opinion. (emphasis added). The expert opinion of a treating physician as to the existence of a disability is binding on the fact-finder "*unless contradicted by substantial evidence to the contrary.*" (emphasis added). *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (quoting *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978)); *see also* 20 C.F.R. § 404.1527(d)(2). Here, the ALJ has cited no substantial evidence to contradict Dr. Lipstate's findings, and a full review of this record by the undersigned fails to disclose any such substantial evidence. This constitutes error.

Additionally, the ALJ failed to perform the proper analysis in rejecting Dr. Lipstate's opinion. The Fifth Circuit has held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." (emphasis in original). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). In *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), the court held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of

examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Id.* at 621 (citing *Newton,* 209 F.3d at 456). The ALJ did not consider those factors in this case, which constitutes error.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to do a proper analysis for rejecting the treating specialist's opinion under *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) and *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after

being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

September 12, 2006, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE